**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

AARON DRENBERG,

        Plaintiff,

v.                                                Case No. 6:13-cv-1351-Orl-37KRS

FOCUS! . . . ON SURETY, LLC; and
DANIEL BUCKLES,

        Defendants.

**ORDER**

This cause is before the Court on the following:

1. Defendants/Counter-Plaintiffs' Counterclaim against Aaron Drenberg (Doc. 8), filed October 7, 2013;

2. Plaintiff/Counter-Defendant Aaron Drenberg's Motion to Dismiss Defendant/Counter-Plaintiff's Counterclaim (Doc. 15), filed October 28, 2013; and

3. Defendants/Counter-Plaintiffs' Response in Opposition to Aaron Drenberg's Motion to Dismiss (Doc. 22), filed December 12, 2013.

**BACKGROUND**

On August 30, 2013, Plaintiff Aaron Drenberg ("Drenberg") filed his Complaint against Defendants Daniel Buckles and Focus! . . . On Surety, LLC ("FOS"), alleging: (1) copyright infringement of certain computer software; (2) breach of contract; (3) contract implied in fact; (4) unjust enrichment; (5) promissory estoppel; (6) fraud in the inducement; and (7) an accounting and constructive trust. (Doc. 1.) Defendants filed an Answer, Affirmative Defenses and a Counterclaim. (Doc. 8.)

The eleven-page Counterclaim is comprised of sixty-six paragraphs and asserts a claim for tortious interference with business relationships ("TIBR") (*id.* ¶¶ 137–146 ("Count I") and a conspiracy claim (*id.* ¶¶ 147–151 ("Count II")). On October 28, 2013, Drenberg moved to dismiss the Counterclaim arguing that: (1) it is a shotgun pleading; (2) it fails to state TIBR or conspiracy claims; and (3) it improperly demands attorney fees from Drenberg. (Doc. 15.) Defendants do not dispute that their demand for attorney fees was improper; however, Defendants do oppose the remainder of Drenberg's motion to dismiss. (Doc. 22.) The motion to dismiss is now ripe for adjudication.

## STANDARDS

Counterclaimants must plead "a short and plain" statement of their claims. Fed. R. Civ. P. 8(a)(2). On a motion to dismiss, the Court limits its consideration to "the well-pleaded factual allegations" of the counterclaim. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the counterclaim must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555. The Court also must dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas. Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## DISCUSSION

**I.     Shotgun Pleading**

Plaintiff first argues that Defendant's Counterclaim should be dismissed because

it is a "shotgun" pleading. (Doc. 15, pp. 2–5.) A "shotgun" pleading generally begins "with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). The long list of general allegations are then "incorporated by reference into each count of the complaint." *Id.* The result is a pleading so vague and confusing that it is virtually impossible to frame a response. *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1207 (M.D. Fla. 2004)

Here, the Counterclaim includes forty-six paragraphs of general allegations (Doc. 8, ¶¶ 90–136), which are incorporated by reference in Counts I and II. (*Id.* ¶¶ 137, 147.) While the form of the Counterclaim may not be optimal, "[g]iven the nature of the claims and the limited set of facts at issue, the Court finds the Counterclaim to be sufficiently clear." *Great Am. Assur. Co. v. Sanchuk, LLC*, 8:10-CV-2568-T-33AEP, 2012 WL 195526, at *2 n.2 (M.D. Fla. Jan. 23, 2012) (rejecting argument that complaint was a shotgun pleading); *Lockheed Martin Corp. v. Boeing Co.*, 314 F. Supp. 2d 1198, 1207 (M.D. Fla. 2004) (same). Accordingly, the Court will not dismiss the Counterclaim as a shotgun pleading.

## II.    Sufficiency of the Pleadings

### a.  The Allegations of the Counterclaim[1]

Defendants allege that Daniel Buckles founded FOS in December 2009, and also founded a company named Focus! . . . On Innovation ("FOI") in 1998. (Doc. 8, ¶¶ 91–93.) FOI allegedly owns software called "E-Surety," which allows carriers of surety bonds to "automate the processing, evaluation, and approval of applications for surety

---

[1] As it must, the Court recites the factual allegations of the Counterclaim in the light most favorable to the Counterclaimants.

3

bonds." (*Id.*) FOI also allegedly owns software called "SureLYNX" which automates the online marketing of surety bonds and the acceptance and processing of applications for surety bonds. (*Id.* ¶¶ 92–95.) Daniel Buckles founded FOS to "sell surety bonds primarily online" and to "demonstrate the feasibility and benefits" of doing so. (*Id.* ¶¶ 97–99.) FOS licenses software from FOI. (*Id.* ¶ 99.)

FOI hired Drenberg in August 2010 in the position of Principal Software Developer. (*Id.* ¶¶ 101–02.) FOI assigned Drenberg to assist FOS "in the implementation of software licensed from [FOI] into [FOS's] business." (*Id.* ¶¶ 106–08.) Drenberg resigned his employment with FOI in April 2012. (*Id.* ¶¶ 110–11.) Approximately nine months after Drenberg resigned from FOI, he entered into an agreement with FOS to perform software and website development work as an independent contractor. (*Id.* ¶¶ 112–16; Doc. 8-1 (the "Consulting Agreement").)

Defendants allege that in early 2013, Drenberg and Daniel Buckles' son, Alexander Buckles, launched a business in direct competition with FOI (the "Competing Company"). (Doc. 8, ¶¶ 118–19.) According to Defendants, Drenberg, Alexander Buckles, and another FOS employee, Jillian Plamondon (the "Conspirators"), conspired to "misappropriate assets" of FOI and FOS to launch the Competing Company. (*Id.* ¶ 121.) Specifically, the Conspirators allegedly: (1) "used computers, email accounts, and corporate servers owned by" FOI and FOS to create the Competing Company's software product; (2) accessed and used FOS's "confidential customer lists, pricing information, and client records" to promote the Competing Business; (3) removed "customer lists, customer files, and other corporate records" from FOS for use in the Completing Business; and (4) used Jillian Plamondon's FOS credit card "to purchase goods to be used in the [Competing Business], including but not limited to, laptop

4

computers, cell phones, and gasoline." (*Id.* ¶¶ 121–24, 129–31.) Defendants further allege that the Conspirators conspired to "misuse funds" of FOS to obtain a license for Jillian Plamondon to act as a surety in all fifty states. (*Id.* ¶¶ 132–36.) Finally, Defendants allege that the Conspirators agreed to intentionally interfere with the business relationships of FOS by: (1) using the misappropriated assets in the Competing Business; and (2) disparaging FOS to its customers by "falsely representing" that FOS "is operating without the required licenses" and is going out of business. (*Id.* ¶¶ 124–35.)

    **b. Count I**

The elements of a TIBR claim in Florida are: "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla.1985). A TIBR claim may be asserted concerning "present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814-15 (Fla. 1994). At the pleading stage, it is not necessary to name the specific customers at issue so long as there are sufficient allegations concerning a business relationship that affords the claimant "existing or prospective legal or contractual rights." *Id.* at 814; *Gossard v. Adia Servs., Inc.*, 723 So. 2d 182, 184 (Fla. 1998) (noting that the "protected business relationship need not be evidenced by an enforceable contract").

Here, Drenberg argues that Defendants have failed to sufficiently allege a TIBR claim because the only customers referenced in the Counterclaim are those of the non-

party FOI–not FOS. (Doc. 15, pp. 10–11.) Drenberg dismisses Defendants' allegations that FOS has "binding contracts" with "Surety Carriers" because such allegations purportedly conflict with "earlier allegations that the 'Surety Carriers' are customers of non-party FOI." (*Id.* at 11.) Consistent with *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821 (Fla. 1996), Defendants concede that they will ultimately have to *prove* interference with *specifically named entities*, but they argue that at the pleading stage their allegations concerning cancelled bond purchase transactions with ultimately identifiable customers of FOS are sufficient. (Doc. 22, pp. 12–13); *Ferguson Transp., Inc.*, 687 So. 2d at 822 (holding that a plaintiff ultimately must "prove a business relationship with identifiable customers").

The Court agrees with Defendants and rejects Drenberg's arguments that the allegations of the Counterclaim are fatally contradictory or vague. It is entirely plausible that FOI and FOS share customers who purchase software from FOI and bonds and bond services from FOS. Further, at this stage, Defendants' allegations that FOS's unnamed surety customers have "cancelled" their bond purchases with FOS as a result of Drenberg's interference are sufficient to state a TIBR claim. *See Total Mktg. Techs., Inc. v. Angel Medflight Worldwide Air Ambulance Servs., LLC*, No. 8:10-cv-2680-T-33TBM, 2012 WL 33150, at *3 (M.D. Fla. Jan. 6, 2012) (denying motion to dismiss TIBR claim because it was plausible that the "customers or prospective customers" referenced in the complaint were "identifiable through discovery"); *Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1240 (M.D. Fla. 2008) (denying motion to dismiss TIBR claim despite failure to name specific customers); *e.g., Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861CIV, 2005 WL 975773, at *6 (S.D. Fla. Mar. 4, 2005) (finding that allegations concerning a "network of dealers" went

"beyond merely alleging business relationships with the 'general business community'"); *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1344–45 (S.D. Fla. 1998) (finding the plaintiffs sufficiently alleged that defendant interfered with plaintiff's contracts with "foreign governments who intended to purchase the SOCOM RIB upon the award of the Production contract"); *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1570 (S.D. Fla. 1996) (denying motion to dismiss TIBR claim despite failure to "specifically identify each of the relationships interfered with"). Accordingly, the Court will deny Drenberg's motion to dismiss Count I.

**c. Count II**

The essentials elements of a civil conspiracy claim are: "(a) a conspiracy between two or more parties, (b) to do an unlawful act, or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Bond v. Koscot Interplanetary, Inc.*, 246 So. 2d 631, 635–36 (Fla. 4th DCA 1971) (quoting 4 Fla. Law & Practice, Conspiracy § 13); *e.g., Charles v. Florida Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159–60 (Fla. 3d DCA 2008) (listing elements). "[A]n actionable conspiracy requires an actionable underlying tort or wrong." *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997).

Drenberg argues that Count II should be dismissed because Defendants' conspiracy allegations are not "clear, positive and specific," and Drenberg must "comb through the general allegations [to] find exactly what it is he allegedly conspired to do.'" (Doc. 15, pp. 13–14.) Pointing to various paragraphs of its Counterclaim, Defendants counter that they have properly identified the Conspirators, the objects of the conspiracy, the overt acts, and the resulting damages. (Doc. 22, pp. 17–20.) The Court

agrees with Defendants and will deny Drenberg's motion to dismiss Count II. *Charles*, 988 So. 2d at 1159–60 (reversing dismissal of conspiracy claim); *Nicholson v. Kellin*, 481 So. 2d 931, 935–36 (Fla. 5th DCA 1985) (same); *e.g.*, *Simon Prop. Group, Inc. v. Lauria*, 6:11-CV-1598-ORL-31, 2012 WL 1934405, at *5 (M.D. Fla. 2012) (denying motion to dismiss conspiracy claim).

### III.  Attorney Fees

In their Counterclaim, Defendants request that they be awarded their attorney's fees. (Doc. 8, p. 20 ("DEMAND FOR ATTORNEY'S FEES").) Drenberg argues that under the "American Rule" concerning attorney's fees, Defendants' attorney's fee demand should be stricken. (Doc. 15, p. 19.)  Defendants did not respond to Drenberg's argument, which the Court finds to be well-taken.  Accordingly, Defendants' demand for attorney fees is due to be stricken.[2]

### CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff/Counter-Defendant Aaron Drenberg's Motion to Dismiss Defendant/Counter-Plaintiff's Counterclaim (Doc. 15) is **GRANTED IN PART AND DENIED IN PART**.

2. Aaron Drenberg's request that the Court strike Defendants' demand for attorney fees is **GRANTED**, and the Motion to Dismiss is otherwise **DENIED**.

---

[2] "In the United States, parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W.V. Dept. of Health & Human Res.*, 532 U.S. 598, 602 (2001). "Under this 'American Rule,' we follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" *Id.* (citing *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)); *Bell v. U.S.B. Acquisition Co., Inc.*, 734 So. 2d 403, 406 (Fla. 1999) (recognizing the "American Rule" for attorney fees).

3. The "DEMAND FOR ATTORNEY'S FEES" set forth at page 20 of the Counterclaim (Doc. 8) is **STRICKEN**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 20, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record